UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| RAVEN SUN CREATIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> WALT DISNEY PARKS AND RESORTS U.S., INC., <br><br> Defendant. | CASE NO.:  6:21-cv-01864 |

**COMPLAINT FOR PATENT INFRINGEMENT**
**(INJUNCTIVE RELIEF DEMANDED)**

Plaintiff RAVEN SUN CREATIVE, INC. files this Complaint for Patent Infringement against Defendant WALT DISNEY PARKS AND RESORTS U.S., INC. and in support thereof states:

**PARTIES**

1. Plaintiff is corporation organized and existing under the laws of New York and has a principal place of business located at 2539 Rte. 29, Middle Grove, New York 12850.

2. Defendant is a company organized and existing under the laws of Florida.  It has a principal place of business located at 1313 South Harbor Blvd., Anaheim, California 92802. Upon information and belief, Defendant has a place of business at 351 Studio Dr., Lake Buena Vista, Florida 32830. Upon information and belief, Defendant is a subsidiary of The Walt Disney

Company and is responsible for the operation of amusement parks, including those located in Florida and California.  Defendant may be served with process by serving its Registered Agent Corporation Service Company, 1201 Hays Street, Tallahassee, FL  32301-2525.

## JURISDICTION AND VENUE

3. This is an action for infringement of a United States patent under 35 U.S.C. §§ 271, et seq. Federal question jurisdiction is conferred to this Court over patent infringement actions under 28 U.S.C. §§ 1331 and 1338(a).

4. Star Wars: Rise of the Resistance is a ride attraction located in several geographic places, including within Disney's Star Wars: Galaxy's Edge found at Disney's Hollywood Studios in Lake Buena Vista, Florida and at Disneyland Park in Anaheim, California.

5. Accordingly, Defendant resides in this District and has had minimum contacts with the Orlando Division of the Middle District of Florida, such that this venue is fair and reasonable.  Defendant has committed such purposeful acts and/or transactions in this District that it reasonably should know and expect that they could be hailed into this Court as a consequence of such activities.  Defendant has established continuous and systematic contacts with Florida and in this judicial district, including having a regular and established place of business in Buena Vista, Florida.

6. Defendant has committed acts of patent infringement within Florida and this judicial district giving rise to this action. Defendant has transacted and, at the time of the filing of this Complaint, continues to transact business within the Orlando Division of the Middle District of Florida, including at its Hollywood Studios park located in Buena Vista, Florida. Defendant directly and/or through its distribution network, has placed infringing products or systems, including its Star Wars: Rise of the Resistance ride, within the stream of commerce directed at this District, with the knowledge and/or understanding that those products and systems will be sold and/or used in the Middle District of Florida.

7. For these reasons, personal jurisdiction exists, and venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c) and/or 28 U.S.C. § 1400(b).

## BACKGROUND FACTS

8. Plaintiff Raven Sun Creative, Inc. provides executive consulting, experiential design, and destination development services to some of the world's largest most innovative brands. These wide-ranging services are uniquely tailored to the specific needs of Plaintiff's partners and include, by way of example only, assisting in the development of project lifecycle strategies, contributing creative direction, leading architectural design and space planning, and supervising production, installation and commissioning

of projects. In all of these endeavors, Plaintiff strives to help its partners create entertainment experiences that are both immersive and transformational for the target participant and/or audience.

9. Plaintiff's Principal and Chief Creative Officer, Louis Alfieri, has worked in the experiential and entertainment development industry for over 30 years, always seeking to push the boundaries in his pursuit of perfecting the art of experience.  During his decades-spanning career, Mr. Alfieri has worked with global brands as an authority in leading, designing, and building experiential entertainment destinations, mixed-use developments, immersive media-based attractions, retail locations, cultural sites, and experiential events.  Formerly the Creative Director at Universal Studios, Mr. Alfieri has extensive experience in the development of amusement park rides.  Mr. Alfieri has partnered with entertainment providers around the world, including Hershey Entertainment, Carnival Cruises, Lamborghini, Toho Studios, and Ubisoft.

10. Plaintiff, by way of assignment, is the owner of United States Patent No. 9,266,028 B2 ("the '028 Patent" or "Patent-in-Suit") which was issued on February 23, 2016, entitled "Tower Ride."  A true and correct copy of the '028 Patent is attached hereto as Exhibit 1.

11. Generally speaking, the '028 Patent relates to the design of a novel, vertically-aligned amusement ride apparatus.  More specifically, the

'028 Patent is directed to an amusement park ride that moves a rider in a manner that is coordinated with a video presentation being displayed on a screen visible to the rider. Through the use of the patented invention, the rider can have a simulated experience of environments that known rides cannot simulate for the typical rider. By way of example, Claim 1 of the '028 Patent reads as follows:

> 1. An amusement ride apparatus comprising:
>
> a rider station for supporting a rider in a predetermined position;
>
> a rider station trolley for supporting the rider station;
>
> a rider station tower operatively engaged with the rider station trolley such that the rider station trolley can move vertically along the rider station tower;
>
> a motor system operatively engaged with the rider station trolley for vertically moving the rider station trolley and the rider station along the rider station tower;
> an actuator system for moving the rider station relative to the rider station trolley;
>
> a screen located for viewing by a rider supported in the predetermined position in the rider station;
>
> a projector for projecting imagery on the screen; and
>
> a controller operatively engaged with the projector, the motor system, and the actuator system and adapted to cause: (a) the motor system to vertically position the rider station along the rider station tower so as to coordinate the vertical position of the rider station with imagery produced by the projector and displayed on the screen and (b) the actuator system to position the rider station relative to the rider station trolley so as to coordinate the position of the rider station relative to the rider station trolley with imagery produced by the projector and displayed on the screen;

> wherein, in coordinating the position of the rider station relative to the rider station tower and the rider station trolley with imagery being displayed on the screen, the controller is capable of causing:
>
> > (a) the motor system to vertically move the rider station trolley and rider station along the rider station tower and the actuator system to simultaneously maintain a position of the rider station relative to the rider station trolley,
> >
> > (b) the motor system to maintain the position of the rider station trolley and rider station along the rider station tower and the actuator system to simultaneously move the rider station relative to the rider station trolley
> >
> > (c) the motor system to vertically move the rider station trolley and rider statin along the rider station tower and the actuator system to simultaneously move the rider station relative to the rider station trolley.

12. Figures 1, 2, 3 and 4 and 6 of the '028 Patent show diagrams of an exemplary embodiment of the invention, illustrating features that allow the motion of the rider trolley to be coordinated with the video presentation, and content of the video presentation, being displayed on the screen:



Figure 2                                                           Figure 1

13.     In the above embodiments, Figures 1 and 2 show a rider trolley on an amusement ride apparatus.  Figure 1 illustrates how the rider station (22), and the rider trolley (24) that supports it, are situated in relation to a projector (28) that projects images on the screen (36) as the rider station and trolley move vertically on the track.  In this way, Figure 1 illustrates an embodiment of a tower ride that operates to coordinate the motion of a rider with a video image being displayed on a screen and visible to the rider. Figure 2 further illustrates portions of the embodiment of the tower ride shown in Figure 1.  The embodiment includes systems for imparting motion to the rider station, including vertical movement as well as movement of the

rider station relative to the rider station trolley. A controller is provided to engage the projector, motor system, actuator system, and is operable to coordinate the position of the rider station, and by extension any rider disposed in the rider station, with the imagery being produced on the screen.

14. The disclosures made by the '028 Patent provide for vast improvements over other systems that existed at the time of the invention. Specifically, the novel way that the '028 Patent allows for the coordination of vertical movement of the rider station and trolley with the imagery being projected on the screen leads to an enhanced illusion and improved experience for the rider. In addition, the ability to have multiple programming of variable speeds of ascent and descent, again coordinated with the imagery being displayed on the screen, dramatically changes the illusion experienced by the rider because it contributes to an improved simulated experience of moving in the environment being displayed on the screen.

## COUNT 1 – PATENT INFRINGEMENT

15. Plaintiff repeats and realleges paragraphs 1 through 14 as if fully set forth herein.

16. Defendant owns and operates several theme parks around the world including Disney's Hollywood Studios in Buena Vista, Florida, and Disneyland Park in Anaheim, California.[1] Defendant opened up a new ride, Star Wars: Rise of the Resistance ("Accused Products" or "ROTR" herein), at

---

[1] *See, e.g.*, https://disneyworld.disney.go.com/attractions/hollywood-studios/star-wars-rise-of-the-resistance/ and https://disneyland.disney.go.com/attractions/disneyland/star-wars-rise-of-the-resistance/

Hollywood Studios on or about December 5, 2019, and at Disneyland Resort on or about January 17, 2020.[2]

17. Defendant markets ROTR as a "massive attraction with multiple ride systems that is unlike anything you've ever experienced at the Disneyland Resort. . . or anywhere else in the galaxy."[3] Former Walt Disney Company CEO Bob Iger referred to ROTR as the "most technologically advanced and immersive attraction that [they] have ever imagined."[4]

18. Defendant's Imagineering Executive Creative Director, John Larena, describes ROTR as a " . . . trackless troop transport . . . which is mounted to a motion-based simulator, which is mounted to a controlled drop ride system," wherein " . . . you have a triple stack of ride systems all working together." Mr. Larena also noted that use of the vertical track instead of a lateral track "gives you a really incredible wow."[5]

19. Scott Trowbridge, Creative Lead of Star Wars: Galaxy's Edge described the mechanics of ROTR as "tak[ing] a trackless ride vehicle . . . put[ting] it on a motion base, and then . . . tak[ing] that whole motion base and attach[ing] it to a freefall drop tower."[6]

---

[2] *See* https://www.prnewswire.com/news-releases/star-wars-rise-of-the-resistance-brings-even-more-thrills-to-star-wars-galaxys-edge-at-disneyland-resort-300988960.html

[3] Publicly available at https://disneyland.disney.go.com/attractions/disneyland/star-wars-rise-of-the-resistance/

[4] Publicly available at https://thewaltdisneycompany.com/app/uploads/2019/03/2019-asm-transcript.pdf.

[5] Publicly available at https://www.ocregister.com/2019/12/06/how-disney-pulled-off-the-spectacular-technical-feats-in-rise-of-the-resistance-at-star-wars-galaxys-edge/?clearUserState=true).

[6] The Imagineering Story, at 55:27, available at https://disneyplusoriginals.disney.com/show/the-imagineering-story.

20.  ROTR is an amusement park attraction which includes a ride apparatus with a rider station. As shown below, the rider station supports the rider in a predetermined position and includes a rider station trolley that supports the rider station.



Figure 3: How It Works: Rise of the Resistance[7] at 5:33



Figure 4: The Imagineering Story at 55:34

---

[7] Publicly available at https://www.youtube.com/watch?v=TWs_-UA51QE

21. ROTR also consists of a rider station tower that operatively engages with the rider station trolley to allow the rider station to move vertically along the track. Defendant identifies this system as a "free fall drop tower" in its behind the scenes movie, *The Imagineering Story*.[8] The free fall drop tower allows the riders to experience a "controlled drop" which is controlled by a motor system that moves the rider station along the tower track.


Figure 5: The Imagineering Story at 55:37

22. As shown below, ROTR utilizes actuators for moving the rider station relative to the rider station trolley.


Figure 6: The Imagineering Story at 55:41

---

[8] The Imagineering Story, at 55:27, available at https://disneyplusoriginals.disney.com/show/the-imagineering-story.

23. ROTR uses large screens and projectors that are positioned in a way that riders can view the screen and images that are being displayed on it.



Figure 7: The Imagineering story at 55:36

24. A controller controls the ROTR's actuator systems, projectors, and the motor system so that it can coordinate the rider station's movements with the imagery projected on the screens. Defendant describes this system as "a triple stack of ride systems all working together."9

25. Based on the public statements of Defendant's employees who worked on ROTR, as well as other publicly available information relating to how ROTR operates, the Accused Products were manufactured to operate, have operated, and continue to operate according to the patented invention covered by at least Claim 1 of the '028 Patent. As such, Defendant has infringed directly and continues to infringe directly, either literally or under the doctrine of equivalents, at least Claim 1 of the '028 Patent by its manufacture and continued use of the Accused Products. Defendant is therefore liable for infringement of the '028 Patent pursuant to 35 U.S.C. § 271.

---

9 Publicly available at https://www.ocregister.com/2019/12/06/how-disney-pulled-off-the-spectacular-technical-feats-in-rise-of-the-resistance-at-star-wars-galaxys-edge/?clearUserState=true).

26. Long before the release of ROTR, in 2014 Plaintiff submitted a proposal to Walt Disney Imagineering for its Ultra Tower Show Experience. Plaintiff's Ultra Tower concept was designed to provide an immersive rider experience through a simulated tower ride design. Parts of the Ultra Tower revolutionary design, which at the time was pending in the application that would ultimately issue as the '028 Patent, combined a motion-based ride vehicle mounted to a variable speed drop tower and integrated high-definition media to create an immersive sensory experience. Despite Plaintiff's detailed submission outlining its Ultra Tower concept to Disney in 2014, Disney opted to proceed with the implementation of ROTR without further engaging Plaintiff.

27. Following the release of ROTR in 2019 and 2020, Disney has repeatedly and consistently touted the Accused Products' widespread acclaim. During its reporting of its fiscal first-quarter 2020 results, Disney announced that attendance rose two percent at its domestic theme parks during that quarter, and spending at the parks was up ten percent. Disney's former CEO Bob Iger reported that the twin debuts of the ROTR attractions contributed to an increase in per-capita spending in the parks.

28. Before the filing of this suit, Plaintiff attempted to amicably engage Defendant on more than one occasion in an effort to resolve its claims of infringement. On or about March 10, 2020, Plaintiff notified Defendant that their ROTR rides infringe the claims of Plaintiff's '028 patent. Unfortunately, on or about November 17, 2020 Defendant notified Plaintiff that it would continue operating the Accused Products and that it would not remunerate Plaintiff for its continued infringement of the '028 Patent.

29. Defendant's infringement has been willful from the time Defendant became aware of its infringement. Defendant has had actual

notice of the '028 Patent, at least as early as March 10, 2020, the date by which Plaintiff gave actual notice of infringement to Defendant. At the latest, the filing of this Complaint constitutes actual notice in accordance with 35 U.S.C. § 287.

30. Plaintiff and all predecessors-in-interest to the '028 Patent have complied with the requirements of 35 U.S.C. § 287.

31. Plaintiff expressly reserves the right to assert additional claims of the '028 Patent against Defendant.

32. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates for its infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284. In addition, Defendant has obtained revenues, gains, benefits, and advantages, including convoyed sales, through the manufacture, promotion, use and sale of the Accused Products as described herein. By way of example, Defendant markets, uses and sells other products that are not covered by the claims of the '028 Patent but that are used/sold with or in conjunction with the Accused Products. Plaintiff is entitled to monetary damages that take into account all convoyed sales and profits from convoyed sales of non-patented items made by Defendant.

33. Based on Defendant's objective recklessness, Plaintiff is further entitled to enhanced damages under 35 U.S.C. § 284.

## JURY DEMAND

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that one or more claims of the Asserted Patent have been directly infringed, either literally or under the doctrine of equivalents, by Defendant;

b. Judgment that Defendant accounts for and pays to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein;

c. that Defendant's infringement be found to be willful from the time Defendant became aware of its infringement, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

e. That the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

    f.    That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

DATED:  November 8, 2021.                    Respectfully submitted,

/s/ Joel B. Rothman
SRIPLAW
21301 Powerline Road
Suite 100
Boca Raton, Florida 33433
(561) 404-4350
joel.rothman@sriplaw.com

Jonathan T. Suder
Dave R. Gunter
FRIEDMAN, SUDER & COOKE
604 East 4th Street, Suite 200
Fort Worth, TX 76102
817-334-0400
Fax: 817-334-0401
jts@fsclaw.com
gunter@fsclaw.com

ATTORNEYS FOR PLAINTIFF
RAVEN SUN CREATIVE, INC.